UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERMAINE BURTON,                          Case No.: 23-11093
                      Plaintiff,
v.                                        Matthew F. Leitman
                                          United States District Judge
JAY SAPH, *et al.*,
                      Defendants.         Curtis Ivy, Jr.
_____/          United States Magistrate Judge


**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT (ECF No. 13)**


I.     **PROCEDURAL HISTORY**

Plaintiff Jermaine Burton filed this civil rights matter without the assistance of counsel on May 9, 2023, against four medical and corrections staff members at a Michigan Department of Corrections ("MDOC") facility for deliberate indifference to serious medical needs. (ECF No. 1).  On August 16, 2023, Defendants McCninnis, Saph, and Stewart (the MDOC Defendants) moved for summary judgment based on failure to exhaust administrative remedies.  (ECF No. 13).  This case was referred to the undersigned for all pretrial matters on June 1, 2023.  (ECF No. 8).

For the reasons below, the undersigned **RECOMMENDS** that the motion for summary judgment be **GRANTED**.

## II.    COMPLAINT ALLEGATIONS

The events alleged occurred at the Macomb Correctional Facility ("MRF") during September 2021.  Plaintiff has severe sickle cell anemia.  He alleges that on September 4, 2021, he was given inadequate medical care for his anemia and pneumonia.  Specifically, he was in the healthcare unit earlier that day for a panic attack.  He was given pain medication but nothing to treat the difficulty he had breathing.  After he was returned to his regular unit that afternoon, he was in severe pain.  His body tensed up and he fell the floor, unable to get up.  Defendants did not offer immediate medical attention, instead recommending that he drink fluids.  He was later sent to the hospital where it was revealed he had pneumonia. He alleges that the Defendants were deliberately indifferent to his serious medical needs on September 4, 2021. (ECF No. 1, PageID.5-7).

He made allegations regarding exhaustion of administrative remedies.  In the complaint, Plaintiff alleged that MRF officials failed to provide him with a Step II appeal form after several requests for grievance numbers MRF-20-12-2905-12H ("MRF-2905") and MRF-2022-01-0019-12E ("MRF-19").  He asserts that the failure "thwarted the grievance process."  (*Id.* at PageID.4).

## III.    DISCUSSION

### A.    Standard of Review

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for purposes of the motion").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The

nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citation omitted).  In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

That Plaintiff is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz [v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).  The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a *pro se* litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010);

*see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

      B.    <u>Exhaustion under the PLRA</u>

Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e *et seq.*, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress enacted the provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203-04 (2007). Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits[.]" *Porter v. Nussle*, 534 U.S. 516, 524 (2002). In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citation omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. The

prison's grievance process determines when a prisoner has properly exhausted his or her claim. *Id.* at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Even where a prisoner has made some attempts to go through the prison's grievance process, "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

The prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Id.* (citations omitted); *see also Woodford*, 548 U.S. at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . ."). That said, "the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, provided that the plaintiff's original complaint contained at least one fully exhausted claim." *Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017).

Finally, "inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA. *Id.* As a result,

defendants bear the burden of proof on exhaustion. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012) ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies.").

C.     Grievance Procedures at MDOC

Pursuant to Policy Directive 03.02.130, dated March 18, 2019, the administrative remedies available at the MDOC are as follows. First, the inmate must attempt to resolve issues with the staff member involved within two business days of becoming aware of a grievable issue. (ECF 13-2, PageID.64, at ¶ Q). If the issues are not resolved within five business days, the inmate may file a Step I grievance using the appropriate form. (*Id.*). If the inmate is dissatisfied with the Step I disposition, or does not receive a response by ten business days after the due date, he or she may file a Step II grievance using the appropriate form. (*Id.* at PageID.66, ¶ DD). Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response by ten business days after the due date, the inmate may file a Step III grievance. (*Id.* at PageID.67, ¶ HH). The matter is fully exhausted after the disposition of the Step III grievance. *Surles*, 678 F.3d at 455 ("A grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted.").

D.     Analysis

Defendants argue that they should be dismissed because Plaintiff did not complete the three-step grievance process for any of the claims against them. (ECF No. 13).  They discuss three grievances in their opening brief that he filed at Step I but did not pursue to Step III.  Plaintiff attached three grievances to his response, two of which are illegible but all three purportedly concern the September 4, 2021, events.  He contends that he filed those grievances, too, but the prison did not respond to them.  Plaintiff argues that the grievance process was effectively unavailable to him because prison officials did not respond to his grievances, to his requests for information, or to his requests for Step II appeal forms.  In reply, Defendants argue that the grievances attached to the response were not filed, and that even if they were, Plaintiff did not appeal them through all three steps.

        1.     MRF-19 and MRF

Two of the grievances Defendants discuss in the opening brief do not exhaust administrative remedies.  MRF-19 is about not getting prescribed Ensure drinks, not about the events of September 4, 2021, so this grievance does not exhaust the claims.  (ECF No. 13-4, PageID.78).  MRF-2905, according to the grievance coordinator, was filed before September 2021, and thus could not be about the events alleged.  (*See id.* at PageID.75, ¶ 10).  Plaintiff does not contest these grievances.

2.      MRF-20 and Plaintiff's Response Brief Grievances

MRF-20 is about the events in this lawsuit.  It was rejected at Step I as

untimely as it was not received until January 5, 2022 (it is dated December 27,

2021).  (*Id.* at PageID.81-82).  MDOC grievance policy requires a Step I grievance

to be filed within five days of the issue being grieved, unless there is an excuse for

delay.  Plaintiff named Defendant Stewart and non-parties Smith, Fowler, and

Ikwuzor.  He did not appeal that grievance.

In their reply, Defendants contend that the Court should treat their

arguments about this grievance as unopposed because Plaintiff did not address

them.  The undersigned disagrees with their view of Plaintiff's response.  Plaintiff

gave reasons why he did not file a grievance soon after September 4, 2021,

although in providing those reasons he did not expressly expound on why MRF-20,

specifically, was filed nearly four months after the incident.  The undersigned will

treat his arguments as if raised for all grievances mentioned in his response.

One reason given for the untimeliness is that he was in the hospital from

September 4 to September 21, 2021.  A hospital stay excuses an inmate's

untimeliness during the stay.  *See Hodges v. Corizon*, 2015 WL 1511153, at *8

(E.D Mich. Mar. 30, 2015) (undergoing surgery can provide a valid explanation for

the delay in filing a grievance); *Bolin v. Corr. Med. Servs.,* 2007 WL 3203133, at

*5 (E.D. Mich. Oct.31, 2007) (hospital stay and medical condition were valid

reasons for delay in filing grievance). But Plaintiff's September stint in the hospital does not excuse delay until December to file MRF-20.

He also stated that at an unspecified time "after his initial grievance," Plaintiff was placed in segregation for two months. It is unclear which is the "initial grievance." He says that when he was released from segregation, he submitted a grievance against all Defendants after getting their names from other prisoners, which is perhaps a reference to MRF-20. (ECF No. 15, PageID.87). He was in administrative segregation after speaking to family members of a murdered inmate. It does not appear he was placed in segregation for a disciplinary reason. It is unclear if he mentions his time in segregation as an excuse for any delayed grievance filing. If so, he provides no authority or evidence to support that inmates in administrative segregation cannot participate in the grievance process, or that he personally could not participate in the grievance process.

He appears to also rely on his transfers to different prisons between July and November 2022 as reasons why he could not properly exhaust. (*Id.* at PageID.96). Transfers nearly a year after an incident have no bearing on an inmates' ability to exhaust remedies for that incident. Plaintiff's arguments about 2022 transfers do not excuse improper exhaustion.

The last reason to address will require discussion of the three grievances in Plaintiff's response to help explain the arguments and the analysis. To begin,

MDOC grievance policy requires inmates to name the persons involved in the issue being grieved.  Plaintiff argues that he "had to wait almost four months to get the names of the parties involved . . . after he returned from the outside hospital." (ECF No. 15, PageID.87).  After his return to the prison, he sent kites to prison staff to get the names of the medical personnel involved in the September 4th events.  No one responded.  He also spoke with Defendant Martina the day he returned from the hospital, but she refused to give him the names of those involved in his medical care unless he told her why he wanted the names.  She also told him she was not involved in his care that day.  (*Id.* at PageID.95).  He got the names from other prisoners after he was released from segregation, which was for a two-month period after he returned from the hospital.  (*Id.* at PageID.87).

The timeline of events in Plaintiff's response are contradictory.  He says he did not have the names of those involved until sometime in December 2021.  During that month, he filed MRF-20 against Stewart, Smith, Fowler, and Ikwuzor.  Though he says he learned the names of the defendants four months after the incident, the three grievances attached to his response, written September 22, October 4, and October 19, 2021 tell a different story.  The September 22 grievance is legible, the October 4 grievance is legible in small part, and the October 19 grievance is illegible.  The September 22 grievance, as in MRF-20, lists "Smith, Stewart, Fowler, and Ikwuzor" as involved in the issue being grieved.

11

(ECF No. 15, PageID.102).  The grievance dated October 4, 2021, also appears to name the same individuals.  (*Id.* at PageID.103).  In his affidavit, Plaintiff states that he "submitted" those grievances on the dates they were written.  (*Id.* at PageID.96, ¶ 8).

It is contradictory maintaining that he did not know the names until December 2021 but was able to file grievances against those persons during September and October 2021.

This leads to the question of whether the Court should consider the grievances attached to Plaintiff's response.  As mentioned, Defendants contend that there is no proof that Plaintiff in fact filed those grievances.  There are a few reasons why their argument is persuasive.  The grievances lack identifier numbers and dates received.  Ebony Nenrod, the grievance coordinator at MRF who processes Step I grievances, says that when she receives a Step I grievance she first determines whether there is a basis for rejection.  If not, she sends receipt of the grievance to the prisoner and sends the grievance to the Step I respondent.  If there is basis for rejection, she acts as the Step I respondent and sends the grievance to the assistant deputy warden for review.  After the assistant deputy warden signs the rejection, Nenrod logs the response in the database and returns the grievance to the prisoner.  (ECF No. 13-4, PageID.73-74,  ¶ 4).  She also stated that does not have discretion in deciding whether to log or process a Step I grievance.  (*Id.* at

PageID.74, ¶ 6).  The lack of identifier number and date received suggest that the grievances were not filed or submitted as Plaintiff states.  Plaintiff also submitted a copy of the grievance forms written on white paper.  When a grievance is submitted, the prisoner is given the "goldenrod" carbon copy to have for their records; the prison keeps the white and other color copies.  This is explained at the bottom of each Step I grievance.  (*See* ECF No. 15, PageID.101).  Having the white copy to attach to his brief suggests the grievances were not submitted. Nenrod provided a second affidavit with Defendants' reply in which she swears, after reviewing Plaintiff's response brief grievances, that she does not have any records showing that he submitted them to her office or any kites about those grievances.  If he had submitted them, she would have processed them.  (ECF No. 16-1, PageID.114, at ¶¶ 8, 9).  And it is curious that Plaintiff argues he could not submit MRF-20 sooner because he didn't know the names of those involved, but purports to have submitted grievances in September and October naming the same people named in MRF-20 later that year.  If he had submitted the September and October grievances, one would not expect him to file MRF-20, or would expect that he would mention the prior grievances in MRF-20.

Against these arguments and evidence is Plaintiff's affidavit in which he says he submitted the grievances attached to his response brief but received no response from the prison.  (ECF No. 15, PageID.96, at ¶ 8).  "Summary judgment

will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The undersigned is mindful that "[w]eighing of the evidence or making credibility determinations are prohibited at summary judgment—rather, all facts must be viewed in the light most favorable to the non-moving party." *Keweenaw Bay Indian Cmty. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (citing *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005)).

The Court can resolve Defendants' motion to dismiss without determining whether MRF-20's untimeliness is excusable or Plaintiff's three grievances can in fact be considered here. This is because Plaintiff did not appeal any grievance to the third step, even if he had submitted them. He swears that he asked for Step II appeal forms by kiting "several times" for the form, but he was never given the appeal form. (ECF No. 15, PageID.96, at ¶ 6, 8). He argues that the lack of appeal forms thwarted his ability to complete the grievance process. He notes that the grievance policy does not provide direction if the prison fails to provide a Step II form. (*Id.* at PageID.92).

Plaintiff's argument that his efforts to exhaust administrative remedies were thwarted requires the Court to consider whether his efforts to comply with the grievance procedures were "sufficient under the circumstances." *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 224 (6th Cir. 2011). In *Napier*, for example, the plaintiff

was transferred to a different prison.  He assumed that the grievance process was unavailable to him at the new facility, so he did not take any steps to comply with the grievance process.  *Id.* at 223.  His claims were dismissed for failure to exhaust administration remedies because "[t]he Sixth Circuit requires some affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable."  *Id.* at 224 (internal citations omitted). The Court explained that, when a prisoner is "[f]aced with a policy that was not clearly unavailable, the only way to determine if the process [i]s available, or futile, [i]s to try."  *Id.*

In contrast, in *Peterson v. Cooper*, 463 F. App'x 528 (6th Cir. 2012), the plaintiff requested a Step II appeal form three times after his Step I grievance was denied but did not receive the form.  He later used a Step I form to appeal his grievance to Step III.  *Id.* at 529.  The court ruled that, "[u]nder the circumstances [the plaintiff's] efforts to exhaust were sufficient . . . with regard to the . . . staff members identified in his Step I grievance."  *Id.* at 530.

Though a prisoner need not "utilize every conceivable channel to grieve their case[,]" *Napier*, 636 F.3d at 224, Plaintiff's requests for a Step II appeal form are an insufficient attempt to comply with the grievance process.  In *Peterson*, although the plaintiff's requests for an appeal form were ignored, he still acted to complete the grievance process by using an available document to file a Step III

appeal.  He did not, as Plaintiff did here, sit on his hands after his ignored requests

for a Step II form.  Plaintiff could have taken some other kind of action to appeal

his grieivance(s).  *See, e.g.*, *Brown v. Davidson*, 2018 WL 1141420, at *1 (W.D.

Mich. Mar. 2, 2018) ("Plaintiff's efforts were reasonable under the circumstances.

That is, Plaintiff requested a Step II form, and when the grievance coordinator

failed to timely respond to Plaintiff's request, Plaintiff proceeded to file a Step III

grievance.").  Plaintiff's failure to take sufficient steps to take his grievance to Step

III is fatal to his claims against the MDOC Defendants.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

MDOC Defendants' motion for summary judgment (ECF No. 13) be **GRANTED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and

Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health

and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:                                          s/Curtis Ivy, Jr.
                                               Curtis Ivy, Jr.
                                               United States Magistrate Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on January 3, 2024.

                                               s/Sara Krause
                                               Case Manager
                                               (810) 341-7850